1
2
3
4
5          UNITED STATES DISTRICT COURT
6         NORTHERN DISTRICT OF CALIFORNIA
7
8  BERNARDOS GRAY, JR.,                No. C 13-4929 SI (pr)
9          Plaintiff,                  **ORDER OF SERVICE**
10    v.
11 G. D. LEWIS; et al.,
12          Defendants.
13 _____/
14
15              **INTRODUCTION**
16        Bernardos Gray, Jr., currently an inmate at the Department of State Hospitals facility at
17 Salinas Valley State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983.   His
18 complaint is now before the court for review under 28 U.S.C. § 1915A.
19
20              **BACKGROUND**
21        Gray claims that prison officials impeded his efforts to practice his Yahweh religion while
22 he was housed at Pelican Bay State Prison.  His complaint alleges the following:
23        Gray was sent from Corcoran State Prison to Pelican Bay's crisis bed facility (i.e., a
24 mental health facility) on June 28, 2012.  Once he arrived at Pelican Bay, Gray continued not
25 to eat food – a practice he apparently started while at Corcoran State Prison – because mental
26 health staff and correctional officers would not provide him kosher meals, even though he had
27 been approved for kosher meals by a rabbi at Corcoran State Prison.  Gray was eventually
28 released from the crisis bed facility (i.e., a mental health facility) to the general population, and
   continued not to eat the prison food because it was not kosher.  The absence of food made him

<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

United States District Court
For the Northern District of California

1   very sick, and he was given medicine for his kidney damage.

2       Gray submitted forms to the Pelican Bay chaplain "requesting to be permitted to practice

3   his religious beliefs which consist of: kosher meals, Yahweh religious ceremonies, holy

4   garments, religious books, following Yahweh's 613 Laws, religious legal name change, financial

5   aid assistance, and cellmate arrangements."  Docket # 1 at 7.  Chaplain Michael replied that he

6   would meet with Gray regarding his religion, but never did so.  Gray then submitted inmate

7   appeals.  Defendants Losacco, Cook, Lewis, Davis and Lozano considered his inmate appeals

8   and failed to provide his requested religious accommodations.  Defendant Losacco, who

9   conducted the investigation for the appeal, "did not give a true and correct report about Plaintiff

10  (sic) religion" and this caused Gray not to receive his requested religious accommodations.  *Id.*

11  at 9-10.  Gray alleges that defendants knew or should have known that he was suffering from

12  starvation due to their failure to provide a kosher diet to him.

13      According to Gray, although the Yahweh religion restricts him from eating non-kosher

14  food, the Yahweh religion is not aligned with the Jewish religion.  *Id.* at 11.  "The Yahweh

15  religion is in opposition with the Jewish, Christian, Catholic, Buddist (sic), Hindu, Muslim, and

16  Satanic, etc."  *Id.*  Thus, prison officials' suggestion that his religious needs could be met by

17  attending Jewish services and purchasing Jewish religious items was unacceptable to him.

18      On September 5, 2013, Gray was transferred to CSP - Sacramento for a court hearing.

19  While there, he spoke on the telephone with that prison's rabbi, Korik, about his request for

20  kosher meals.  Rabbi Korik said he could not approve Gray for kosher meals if he was not

21  Jewish and then said that, since Gray had already been approved at Corcoran and was receiving

22  kosher meals at CSP - Sacramento, "'I'm not going to stop you.'"  Docket # 1 at 11.  While at CSP

23  Sacramento, Gray received the kosher meals, but did not receive them when he transferred back

24  to Pelican Bay.  *Id.*

25

26                              **DISCUSSION**

27      A federal court must engage in a preliminary screening of any case in which a prisoner

28  seeks redress from a governmental entity or officer or employee of a governmental entity.  *See*

**United States District Court**
For the Northern District of California

28 U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The First Amendment guarantees the right to the free exercise of religion.  In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests.  *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).  Inmates' religious freedoms also are protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.  Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).  For an RLUIPA claim, the plaintiff-inmate must show that the government has imposed a substantial burden on his religious exercise.  A "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *San Jose Christian College v. Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

Giving it the liberal construction to which it is entitled, the *pro se* complaint states cognizable claims for a violation of Gray's First Amendment right to the free exercise of religion and for a violation of Gray's rights under RLUIPA.  The complaint adequately links defendants Michael, Losacco, Cook, Lewis, Davis and Lozano to the claims based on their roles in denying

his requests for a religious diet and other religious accommodations.

Gray also urges that his right to equal protection was violated because he was treated less favorably than inmates of other religions.  The complaint, liberally construed, states a cognizable claim against defendants Michael, Losacco, Cook, Lewis, Davis and Lozano for a violation of Gray's rights under the Fourteenth Amendment's Equal Protection Clause.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (Equal Protection Clause's command is "essentially a direction that all persons similarly situated should be treated alike.")

Gray also urges that defendants violated his right to be free from cruel and unusual punishment by failing to provide him food that he could eat consistent with his religious beliefs.  Giving the *pro se* complaint the liberal construction to which it is entitled, an Eighth Amendment claim is stated against defendants Michael, Losacco, Cook, Lewis, Davis and Lozano.  *See Hebbe v. Pliler*, 627 F.3d 338, 343 (9th Cir. 2010) (quoting *Allen v. City and County of Honolulu*, 39 F.3d 936, 940 (9th Cir. 1994) ("'[A]n inmate cannot be forced to sacrifice one constitutionally protected right solely because another is respected.'")

The potential liability of the defendants who allegedly reviewed and rejected the inmate appeal is under the First Amendment, RLUIPA, the Equal Protection Clause, and the Eighth Amendment, and is *not* under the Fourteenth Amendment's Due Process Clause.  There is no constitutional right to a prison or jail administrative appeal or grievance system in California, and therefore no due process liability for failing to process or decide an inmate appeal properly.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). If a defendant only denied an inmate appeal about a religion problem that already had occurred and was complete (e.g., an exclusion of the inmate from a religious ceremony on a past date), there would be no liability for a constitutional violation; however, where the problem is an ongoing religious need and the request is made in an inmate appeal to remedy the ongoing problem, liability can be based on the denial of an inmate appeal, just as it could be based on the denial of a verbal request from the inmate.  *Cf. Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) (supervisor may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help).

United States District Court
For the Northern District of California

A claim is not stated under any theory against rabbi Korik, the rabbi at CSP - Sacramento, because he did not prevent Gray from receiving kosher meals.  Gray's allegations show that he talked to the rabbi and, although Korik didn't think Gray was entitled to the kosher meals, he said he would not prevent Gray from receiving them.  Further, Gray received the kosher meals while at CSP - Sacramento.

**CONCLUSION**

1.     The complaint, liberally construed, states cognizable claims under § 1983 for violations of plaintiff's First Amendment religious freedom, RLUIPA, equal protection and Eighth Amendment rights against defendants Michael, Losacco, Cook, Lewis, Davis and Lozano.  All other defendants and claims are dismissed.

2.     The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint and a copy of all the documents in the case file upon the following defendants, who apparently are employed at Pelican Bay, unless otherwise noted:

> - L. Michael (chaplain)
> - G. D. Lewis (warden)
> - R. Losacco (appeal interviewer/community resource manager)
> - M. A. Cook (second level appeal reviewer)
> - R. L. Davis (CDCR Office of Inmate Appeals in Sacramento)
> - J. D. Lozano (CDCR Office of Inmate Appeals in Sacramento)

3.     In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.     No later than **April 18, 2014**, defendants must file and serve a motion for summary judgment or other dispositive motion.  If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due.  If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion.  *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).  If defendants file a motion to dismiss for non-exhaustion of administrative remedies, defendants must provide to plaintiff

United States District Court
For the Northern District of California

a notice regarding motions to dismiss for non-exhaustion procedures at the time they file such a motion. *See Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **May 16, 2014**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment. Plaintiff also must bear in mind the notice and warning regarding motions to dismiss for non-exhaustion provided later in this order as he prepares his opposition to any motion to dismiss.

c. If defendants wish to file a reply brief, the reply brief must be filed and served no later than **May 30, 2014**.

4. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment and motions to dismiss for non-exhaustion of administrative remedies:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

> The defendants may file a motion to dismiss for failure to exhaust administrative remedies instead of, or in addition to, a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies is similar to a motion for summary judgment in that the court will consider materials beyond the pleadings. You have the right to present any evidence you may have which tends to show that you did exhaust your administrative remedies or were excused from doing so. The evidence may be in the form of declarations (that is, statements of fact signed under penalty of perjury) or authenticated documents (that is, documents accompanied by a declaration showing where they came from and why they are authentic), or discovery documents such as answers to interrogatories or depositions. In considering a motion to dismiss for failure to exhaust, the court can decide disputed issues of fact with regard to this portion of the case. If defendants file a motion to dismiss and it is granted, your case will be dismissed

1    and there will be no trial.  *See generally  Stratton v. Buck*, 697 F.3d at 1008-09.

2         5.    All communications by plaintiff with the court must be served on a defendant's

3    counsel by mailing a true copy of the document to defendant's counsel.  The court may disregard

4    any document which a party files but fails to send a copy of to his opponent.  Until a defendant's

5    counsel has been designated, plaintiff may mail a true copy of the document directly to

6    defendant, but once a defendant is represented by counsel, all documents must be mailed to

7    counsel rather than directly to that defendant.

8         6.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure.

9    No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is

10   required before the parties may conduct discovery.

11        7.    Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the

12   court informed of any change of address and must comply with the court's orders in a timely

13   fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute

14   pursuant to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of

15   address in every pending case every time he is moved to a new facility.

16        8.    Plaintiff is cautioned that he must include the case name and case number for this

17   case on any document he submits to this court for consideration in this case.

18        IT IS SO ORDERED.

19   Dated: February 4, 2014

                                                    _____
20                                                  SUSAN ILLSTON
                                                    United States District Judge

21

22

23

24

25

26

27

28