UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARDOS GRAY, JR.,<br><br>  Plaintiff,<br><br>  v.<br><br>G.D. LEWIS, et al.,<br><br>  Defendants. | Case No. 13-cv-04929-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 36 |

## INTRODUCTION

Bernardos Gray, Jr., filed this *pro se* civil rights action under 42 U.S.C. § 1983. The Court reviewed his complaint under 28 U.S.C. § 1915A and liberally construed it to include claims for damages, declaratory relief, and injunctive relief for violations of his First, Eighth, and Fourteenth Amendment rights and rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), plaintiff filed an opposition, and defendants filed a reply to plaintiff's opposition. The Court will grant the motion in part, dismissing all claims for damages against defendant Lewis in his official capacity and all claims for damages under RLUIPA, but will deny the motion in all other respects. The Court also will refer this action to the *Pro Se* Prisoner Mediation Program.

## BACKGROUND

### I. Allegations of Complaint

Plaintiff alleges the following in his complaint (Docket # 1): Plaintiff was transferred to Pelican Bay State Prison ("Pelican Bay") on June 28, 2012, from Corcoran State Prison ("Corcoran"). Docket # 1 at 6. While he was incarcerated at Pelican Bay, he was not provided with resources to practice the Yahweh religion. *Id.* He was "restricted from obtaining" a kosher

1  diet, despite having been approved for kosher meals by a rabbi at Corcoran. *Id.* Plaintiff refused
2  to eat regular prison food, because he believed eating non-kosher food would be "an unforgivable
3  sin." *Id.* Due to his choice not to eat the food that he believed "was unkoshserly prepared,"
4  plaintiff became very sick and was treated for kidney failure. *Id.* at 7.

5  Plaintiff submitted several CDCR 22 forms to Chaplain Mitchell at Pelican Bay,
6  "requesting to be permitted to practice his religious belief[s], which consist of: kosher meals,
7  Yahweh religious ceremonies, holy garments, religious books, following Yahweh's 613 Laws,
8  religious legal name change, financial aid assistance, and cellmate arrangements." *Id.* Chaplain
9  Mitchell "replied to some of plaintiff's CDCR 22 forms," and agreed to meet with plaintiff, but
10 never did. Docket # 1 at 7. Plaintiff then submitted inmate appeals. *Id*. at 7-10. Defendants
11 Losacco, Cook, Lewis, Davis, and Lozano considered plaintiff's appeals but failed to provide his
12 requested religious accommodations. *Id*. Defendants "knew or should have known that plaintiff
13 was suffering from starvation." *Id*. at 10.

## II. Mootness Facts

In his complaint, plaintiff described an intermittent provision of kosher meals. He alleged that he was transferred to Pelican Bay from Corcoran on June 28, 2012; and that although he had been approved for kosher meals by a rabbi at Corcoran, he was denied kosher meals at Pelican Bay. Docket # 1 at 6. On September 5, 2013, plaintiff was temporarily transferred to California State Prison - Sacramento ("Sacramento"), where he received kosher meals. *Id.* at 10, 11. When he returned to Pelican Bay, he was not given kosher meals. *Id*. at 11.

In his opposition to defendants' motion to dismiss, plaintiff provided updated information about the kosher meal service. Plaintiff stated that, on December 5, 2013, he was transferred from Pelican Bay to Salinas Valley State Prison ("Salinas Valley"), where he was not given kosher meals. Docket # 52-3 at 1. During his stay at Salinas Valley, he was repeatedly transferred to Sacramento to attend court proceedings, where he initially received but was later denied kosher meals. *Id.* at 2. On January 10, 2015, he returned to Pelican Bay, where he was once again denied kosher meals. *Id.* at 3. On January 23, 2015, he was approved for kosher meals and received his

1  first kosher meal at Pelican Bay. *Id.* at 4. However, his other religious requests have not been
2  granted. *Id.* at 5. Plaintiff is currently in a Department of State Hospitals ("DSH") facility at
3  Salinas Valley, but expects to return to Pelican Bay because DSH does not house inmates on a
4  long-term basis and instead discharges them back to the referring prison upon completion of
5  treatment. Docket # 52 at 2.

**LEGAL STANDARDS**

**I.     Rule 12(b)(1) Motions To Dismiss**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. P. 12(b)(1). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Facially, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). Factually, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In addition, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation and internal brackets omitted).

The jurisdiction of federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. *Pub. Utils. Comm'n v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1458 (9th Cir. 1996). Article III, Section 2 of the Constitution requires the existence of a "case" or "controversy" through all stages of federal judicial proceedings. *Lewis v. Continental*

3

*Bank Corp.*, 494 U.S. 472, 477 (1990). "A case becomes moot . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.,* 133 S. Ct. 721, 723 (2013). However, there is an exception to the mootness doctrine for situations that are "capable of repetition, yet evading review." This exception requires that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

## II.     Rule 12(b)(6) Motions To Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). "A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

4

**DISCUSSION**

**I.     Plaintiff's Requests for Declaratory and Injunctive Relief Are Not Moot**

Defendants have moved, under Rule 12(b)(1), to dismiss part of plaintiff's complaint as moot. They argue that plaintiff's requests for injunctive and declaratory relief regarding the kosher meals and other religious accommodations are moot because plaintiff is no longer housed at Pelican Bay and has not demonstrated a reasonable expectation of returning to Pelican Bay. Docket # 36 at 16, 17. The Court disagrees.

When an inmate is released from prison or transferred to another prison and there is neither a reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claims for injunctive relief should be dismissed as moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995). Here, however, plaintiff has demonstrated a reasonable expectation of his return to Pelican Bay. He states that he currently is at a DSH facility at Salinas Valley and, if the normal practice is followed, he will be returned to Pelican Bay when treatment is completed. This has already happened to him once: he was sent back to Pelican Bay on January 10, 2015, after being released from the DSH facility at Salinas Valley. Docket # 52 at 1-3. It is not merely speculative that he will return to Pelican Bay. The allegations of his complaint and the statements in his declaration in opposition to the motion to dismiss indicate that it is not merely speculative that he will face the same conditions for which he seeks injunctive relief: intermittent denials of kosher meals and a failure to provide certain other religious accommodations.

Defendants argue that the order plaintiff seeks will not serve any useful purpose because defendants cannot affect his conditions of confinement in another prison. Defendants have not shown this to be true. As explained above, plaintiff has demonstrated he is likely to return to Pelican Bay, and the problem may recur at Pelican Bay. Even if he does not return to Pelican Bay, two of the defendants are in the Office of Inmate Appeals stationed in Sacramento and appear to have statewide authority—or at least defendants have not demonstrated that those two persons lack statewide authority. *See* 15 Cal. Code Regs. § 3084.7(c)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and

1    Rehabilitation on an appeal, and shall be conducted by a designated representative under the
2    supervision of the third level Appeals Chief or equivalent.").

3    Defendants also argue that plaintiff's requests for injunctive and declaratory relief are moot
4    because he has been provided with kosher meals. However, plaintiff is receiving kosher meals
5    due to defendants' voluntary cessation. Where jail or prison policy is challenged, for example, the
6    mere voluntary cessation of the alleged unlawful activity does not render the allegations moot.
7    *See Gluth v. Kansas*, 951 F.2d 1504, 1507 (9th Cir. 1991); *Lindquist v. Idaho State Bd. of
8    Corrections*, 776 F.2d 851, 854 (9th Cir. 1985). The allegations of the complaint and the
9    statements in plaintiff's declaration in opposition to the motion to dismiss show the provision of
10   kosher meals to be inconsistent and a problem that has occurred at several different facilities.
11   Defendant's voluntary cessation of denying kosher meals does not make plaintiff's requests for
12   injunctive and declaratory relief moot.

13   Defendants also argue that plaintiff's RLUIPA claim for a religious diet is moot because
14   plaintiff admits that he received kosher meals at the prison in Sacramento. However, plaintiff has
15   submitted evidence that his kosher meals at Sacramento were later terminated. In light of
16   plaintiff's description of repeated interruptions in the kosher meal service in both Pelican Bay and
17   elsewhere, the Court cannot conclude that his RLUIPA claim is moot. *Cf. Walker v. Beard*, No.
18   12-17460, slip op. at 8 (9th Cir. June 18, 2015) ("claim was not moot because the policy pursuant
19   to which the alleged violation occurred was 'system wide' and one of the defendants was in charge
20   of the policy").

21   Finally, the Court notes that defendants focused their mootness argument on the kosher
22   diet request and largely ignored the other religious accommodation requests made by plaintiff.
23   Plaintiff's religious freedom claims are not limited to a religious diet: the Court found cognizable
24   the religious freedom claims based on defendants' "roles in denying [plaintiff's] requests for a
25   religious diet *and other religious accommodations*." Docket # 10 at 3-4 (emphasis added).
26   Plaintiff's religious freedom claims cover more than just kosher meals, and defendants cannot
27   selectively ignore parts of plaintiff's complaint.

28   To summarize, plaintiff's requests for injunctive relief and declaratory relief are not moot.

1  Defendants' Rule 12(b)(1) motion to dismiss the requests for injunctive and declaratory relief is
2  DENIED.

### II. Rule 12(b)(6) Motion

#### A. The Eleventh Amendment Bars Official-Capacity Claims for Damages.

Plaintiff sued defendant Lewis in his "official and individual capacities." Docket # 1 at 4. Defendants are correct in arguing that plaintiff's claims for damages against defendant Lewis in his official capacity are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985) (Eleventh Amendment immunity from damages in federal court action against state remains in effect when state officials are sued for damages in their official capacity); *see also Walker v. Beard*, No. 12-17460, slip op. at 7 n.3 (9th Cir. June 18, 2015) (defendants have Eleventh Amendment immunity from official capacity damages claims for RLUIPA and First Amendment violations). Although the Eleventh Amendment immunity precludes an award of damages against defendant Lewis in his official capacity, it "does not bar actions for declaratory or injunctive relief brought against state officials in their official capacity." *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 (9th Cir. 1991). Plaintiff's requests for injunctive and declaratory relief against defendant Lewis remain intact, as does plaintiff's request for damages against defendant Lewis in Lewis' individual capacity. *See Hafer v. Melo*, 502 U.S. 25, 31 (1991) (Eleventh Amendment does not bar suits seeking to impose individual liability upon a government official for actions taken under color of state law).

#### B. No Damages Are Available on Plaintiff's RLUIPA Claims.

Plaintiff may not recover damages for claims under RLUIPA against any defendant in either an official or individual capacity, and may only seek equitable relief against a defendant in his official capacity. Eleventh Amendment immunity shields state actors acting in their official capacity from an award of damages under RLUIPA. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1658-59 (2011); *Holley v. California Dep't of Corr.*, 599 F.3d 1108, 1114 (9th Cir. 2010). And RLUIPA does not authorize suits against state actors acting in their individual capacity. *Wood v.*

7

1  *Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). Although RLUIPA was "enacted pursuant to
2  Congress's spending and commerce powers," *id.* at 902, *Wood* discussed only the Spending
3  Clause implications. The court explained that "pursuant to its spending powers, Congress may
4  place conditions on the disbursement of federal funds," *i.e.*, in exchange for receipt of the federal
5  funds, "states agree to adhere to any attached conditions. These conditions, however, must be
6  clearly stated. Otherwise, states cannot be said to have knowingly accepted them." *Id.* at 903
7  (citation omitted). And "there is nothing in the language or structure of RLUIPA to suggest that
8  Congress contemplated liability of government employees in an individual capacity." *Id.* at 904.
9  RLUIPA thus "does not authorize suits against a person in anything other than an official or
10 governmental capacity, for it is only in that capacity that funds are received." *Id.*

11 After the *Wood* decision, an unpublished case from the Ninth Circuit stated that it was still
12 an open question whether damages might be available if RLUIPA were invoked under the
13 Commerce Clause instead of the Spending Clause. *See Cotton v. Cate*, 578 F. App'x 712, 714
14 (9th Cir. 2014). An even later unpublished Ninth Circuit case ignored the potential distinction
15 drawn by *Cotton* and relied on *Wood* to conclude that RLUIPA does not allow damages against
16 defendants in their individual capacities. *See Hypolite v. California Dept. of Corr.*, 585 F. App'x
17 628 (9th Cir. 2014). One published decision (albeit from a different circuit) rejected the
18 possibility of recovering damages under RLUIPA as enacted under Congress' Commerce Clause
19 powers.

> [W]hen Congress invokes more than one source of federal power to enact a law, it does so as a form of insurance—on the off chance that the first source of authority exceeds its grasp. It does not invoke two sources of authority in order to permit two interpretations of the same phrase. Otherwise, the general presumption that language in a statute means the same thing in all settings would be an exception, not a rule. *See Clark v. Martinez*, 543 U.S. 371, 380, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005). Where possible, and it is eminently possible here, courts avoid treating statutes like chameleons that turn green in some settings but not others.

*Haight v. Thompson*, 793 F.3d 554, 569 (6th Cir. 2014). *Haight* also explained that a Commerce Clause analysis has a "clear statement" rule similar to that for the Spending Clause analysis that RLUIPA did not satisfy. *See id.* at 569 ("'If Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so

8

unmistakably clear in the language of the statute.'" Congress did not do so with RLUIPA). This Court finds the reasoning of *Haight* persuasive and concludes that damages are not available against defendants in their individual capacities for any RLUIPA violation, regardless of whether RLUIPA is invoked under the Spending Clause or the Commerce Clause. *See also Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) ("RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities.").

To summarize, even if plaintiff succeeds on his RLUIPA claim, he cannot obtain damages from any defendant. Leave to amend will not be granted because it would be futile: like the Eleventh Amendment immunity for the official capacity damages claims, the unavailability of damages under RLUIPA is not a problem that can be cured with additional allegations from plaintiff.

### C. Prison Officials Can Be Liable for Their Handling of Plaintiff's Prison Grievances.

Defendants argue "[a] prison official's involvement in the review and resolution of inmate grievances, without more, is not actionable under § 1983." Docket # 36 at 21. Defendants' argument is rejected for the reasons explained at page 4 of the Order of Service. *See* Docket # 10 at 4. Defendants also argue that *Peralta v. Dillard*, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (*en banc*), supports their view that liability does not attach for the denial of an administrative appeal. *Peralta* is distinguishable in that it was decided at the close of the presentation of plaintiff's evidence at trial, after the record had been developed about the defendant's very limited role in reviewing inmate appeals. *See id.* at 1081. Here, the case is at the pleading stage, and the Court is required to liberally construe the *pro se* complaint. Nothing in the complaint forecloses liability for defendants based on their handling of the inmate grievances.

### D. The Complaint States a Claim Against Defendant Mitchell.

Defendants argue that, "[b]ecause [d]efendant Mitchell had no involvement in denying [p]laintiff's requests for religious meals, services, and items, he cannot be held liable for any of [p]laintiff's claims." Docket # 36 at 24. "The only allegations against Mitchell are that he could

9

not immediately meet with [p]laintiff during a prison lockdown and would speak with him at a later date. . . ." *Id.* at 24.

Giving the *pro se* complaint the liberal construction to which it is entitled, the Court finds that a claim is stated under both RLUIPA and the Free Exercise Clause of the First Amendment based on Chaplain Mitchell's response to plaintiff's July 1, 2012 CDCR-22 form requesting religious accommodations. Defendants assume that Chaplain Mitchell's response—that he would meet with plaintiff later after a lockdown ended—was adequate to avoid liability under RLUIPA and the Free Exercise Clause. The adequacy of his response needs to be evaluated at the summary judgment stage with additional evidence and argument. For example, telling a prisoner to wait until a lockdown is over might be reasonable if a lockdown is expected to be of a very limited duration and tantamount to a denial if a lockdown is indefinite.

Defendants also argue that "[a]t no point did [p]laintiff discuss his dietary restrictions." Docket # 36 at 23. Defendants once again are making unwarranted assumptions about the evidence. Plaintiff does not allege that he submitted only one CDCR 22; he alleges that he submitted several of them, so the wording of the one CDCR 22 attached to the complaint does not show his entire efforts to obtain kosher meals and other religious accommodations. Plaintiff alleges that he "submitted several CDCR 22 forms" to Mitchell, "requesting to be permitted to practice his religious belief[s], which consist of: kosher meals . . . ." Docket # 1 at 7. Even if plaintiff failed to mention "kosher meals" in his CDCR 22 forms, the Court cannot say as a matter of law that the omission of that phrase is fatal to his RLUIPA and Free Exercise Clause claims, since he did mention "religious services," Docket # 1-2 at 52, 53, which may include kosher meals.

### E. Plaintiff Did Not Fail to State a Claim for Punitive Damages.

A successful § 1983 plaintiff may recover damages according to principles derived from the common law of torts. *See Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 306, 308 (1986). Punitive damages may be awarded in a § 1983 suit "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

10

1  indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

2  Defendants argue that plaintiff failed to plead sufficient facts to state claims that
3  "[d]efendants violated his constitutional rights" and that "[d]efendants acted with the 'evil motive
4  or intent' . . . necessary to justify his claim for punitive damages." Docket # 36 at 24. However,
5  plaintiff stated, for example, "[d]efendant Michael's acts were willful, intentional, malicious,
6  wanton, [and] despicable in conscious disregard of [p]laintiff's rights . . . ." Docket # 1 at 13.
7  Giving the *pro se* complaint the liberal construction to which it is entitled, plaintiff's allegations
8  are sufficient. There is no heightened pleading requirement for alleging one's state of mind. *See*
9  Fed. R. Civ. P. 9 ("Malice, intent, knowledge, and other conditions of a person's mind may be
10  alleged generally."). Defendants have not provided a case that supports their contention that, as a
11  pleading matter, a *pro se* complaint is deficient when it does not allege specific facts that show
12  entitlement to an award of punitive damages.

### F.     Claims Cannot Be Dismissed due to Qualified Immunity.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is only an immunity from suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." *Hydrick v. Hunter*, 669 F.3d 937, 939-40 (9th Cir. 2012).

Defendants argue that they are entitled to qualified immunity because "[p]laintiff fails to state a claim that [d]efendants violated [p]laintiff's constitutional rights." Docket # 36 at 25. Defendants fail to persuade the Court. Plaintiff pled that he did not receive kosher meals and other requested religious accommodations. Docket # 1 at 6. "Inmates also have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). Allegations that prison officials refuse to provide a healthy diet conforming to sincere religious beliefs state a cognizable claim under § 1983 of denial of the right to exercise religious practices and beliefs. *See Ward v. Walsh*, 1 F.3d

11

873, 877 (9th Cir. 1993) (a Jewish inmate claiming denial of a kosher diet), *cert. denied*, 510 U.S. 1192 (1994); *McElyea*, 833 F.2d at 198 (same); *Moorish Science Temple, Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982) (a Muslim inmate claiming denial of a proper religious diet). Defendants have not demonstrated that an inmate's right to be provided with a religious diet was not clearly established law as of June 2012. Nor have they demonstrated that a reasonable officer would have thought it lawful to deny an inmate's request for kosher meals without investigation. Defendants have not shown that they are entitled to qualified immunity at the pleading stage.

## CONCLUSION

Defendants' motion to dismiss is GRANTED in part and DENIED in part. (Docket # 36.) Plaintiff's official-capacity claims for damages against Mitchell and all of plaintiff's claims for damages under RLUIPA are dismissed. In all other respects, defendants' motion to dismiss is denied.

Recently, the parties submitted a joint request for referral to the *Pro Se* Prisoner Mediation Program. The request is GRANTED. (Docket # 55.) Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for mediation proceedings pursuant to the *Pro Se* Prisoner Mediation Program. The proceedings will take place within **one-hundred and twenty days** of the date this order is filed. Magistrate Judge Vadas will coordinate a time and date for a mediation proceeding with all interested parties and/or their representatives and, within seven days after the conclusion of the mediation proceedings, file with the Court a report for the proceedings. The clerk will send to Magistrate Judge Vadas a copy of this order.

**IT IS SO ORDERED.**

Dated: June 29, 2015

SUSAN ILLSTON
United States District Judge

12