1    KATHLEEN A. KENEALY
Acting Attorney General of California
2    JAY M. GOLDMAN
Supervising Deputy Attorney General
3    BRYAN KAO
Deputy Attorney General
4    State Bar No. 240242
     455 Golden Gate Avenue, Suite 11000
5      San Francisco, CA 94102-7004
     Telephone: (415) 703-5564
6      Fax: (415) 703-5843
     E-mail: Bryan.Kao@doj.ca.gov
7    *Attorneys for Defendants Mitchell,*
*Lozano, Losacco, Davis, Lewis and Cook*

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

12

| | |
|---|---|
| 13   **BERNARDOS GRAY, JR.,** | C 13-4929 SI (PR) |
| 14                  Plaintiff, | **DEFENDANTS' OPPOSITION TO** |
| 15        v. | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| 16   **G.D. LEWIS, et al.,** | Judge:       The Honorable Susan Illston |
| 17                Defendants. | Trial Date:    Not Scheduled<br>Action Filed: 10/23/2013 |
| 18 | |

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction .............................................................................................................. 1

Statement of Issues .................................................................................................. 2

Procedural Posture ................................................................................................... 3

    I.     The parties .............................................................................................. 4

    II.    Plaintiff's lack of facts and evidence ..................................................... 4

    III.   Defendants' statement of material facts ................................................. 4

          A.    Defendants Mitchell, Lewis, Lozano, Davis, and Losacco did not make decisions about Plaintiff's rights. ................................ 4

          B.    CDCR's guidelines on participation in religious activities. ....... 5

                1.    CDCR's religious diet program ...................................... 5

                2.    CDCR's guidelines on establishment of religious programs. ......... 6

                3.    CDCR's guidelines on religious items. .......................... 7

           C.    Plaintiff's failure to exhaust administrative remedies regarding claims for a name change, financial aid, cellmate arrangements, or any acts or omissions by Lewis, Lozano, Losacco, Cook, or Davis. ......... 7

                1.    Plaintiff's grievance PBSP-B-12-03616 is partially granted at the second level. .......................................... 8

                2.    Plaintiff's grievance is denied at the third level of review. ........... 9

Standard of Review ................................................................................................ 10

    I.     Motion for summary judgment ........................................................... 10

    II.    Exhaustion of administrative remedies under the PLRA ................... 10

Argument ............................................................................................................... 11

    I.     Plaintiff's motion must be denied because he failed to submit evidence to support the elements of his claims ................................... 11

    II.    Plaintiff's motion for summary judgment against Mitchell, Lewis, Lozano, Davis, and Losacco must be denied because they did not cause an injury to Plaintiff. ................................................................. 12

    III.   Plaintiff's failure to exhaust administrative remedies. ...................... 13

          A.    Plaintiff did not exhaust his claims for a religious name change, cellmate arrangements, or financial aid assistance. ................... 14

           B.    Plaintiff did not subsequently exhaust his claims against Losacco, Cook, Lewis, Davis, and Lozano for their alleged actions deciding plaintiff's prior inmate appeal. ................................................... 15

          C.    Plaintiff was familiar with CDCR's grievance process. .......... 15

    IV.   Plaintiff's motion for summary judgment should be denied because Defendants did not violate Plaintiff's First Amendment right. ........... 15

          A.    Defendants did not substantially burden Plaintiff's religious practice. .................................................................................... 16

i

B.   Alternatively, Defendants' conduct was reasonably related to legitimate penological interests. ........................................................... 17

V.   Plaintiff's motion should be denied because Defendants did not violate Plaintiff's Fourteenth Amendment right to equal protection. ........................... 18

VI.   Plaintiff's motion for summary judgment should be denied because Defendants did not violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. ........................................................... 19

VII.   Plaintiff's motion for summary judgment should also be denied because Defendants are entitled to qualified immunity against Plaintiff's claims. ............ 21

A.   Because no statutory or constitutional rights were violated, Defendants are entitled to qualified immunity under the first part of Saucier. ........................................................................................... 22

B.   It would not have been clear to a reasonable official under the circumstances that Defendants committed unlawful acts. ........................ 22

Conclusion ............................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Albino v. Baca*
  747 F.3d 1162 (9th Cir. 2014) (en banc)............................................................ 15

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)............................................................................................ 10

*Cruz v. Beto*
  405 U.S. 319 (1972)...................................................................................... 16, 19

*Eisenberg v. Ins. Co. of N. Am.*
  815 F.2d 1285 (9th Cir. 1987) ........................................................................... 10

*Farmer v. Brennan*
  511 U.S. 825 (1994)............................................................................................ 20

*Florence v. Bd. of Chosen Freeholders of County of Burlington*
  132 S. Ct. 1510 (2012)........................................................................................ 17

*Freeman v. Arpaio*
  125 F.3d 732 (9th Cir. 1997).............................................................................. 15

*Furnace v. Sullivan*
  705 F.3d 1021 (9th Cir. 2013)............................................................................ 18

*Griffin v. Arpaio*
  557 F.3d 1117 (9th Cir. 2009)...................................................................... 11, 13

*Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*
  456 F.3d 978 (9th Cir. 2006).............................................................................. 16

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982)............................................................................................ 21

*Jones v. Bock*
  549 U.S. 199 (2007)............................................................................................ 11

*Leer v. Murphy*
  844 F.2d 628 (9th Cir. 1998).............................................................................. 12

*Lemire v. Cal. Dep't of Corr. & Rehab.*
  726 F.3d 1062 (9th Cir. 2013)...................................................................... 19, 20

*Mullenix v. Luna*
  136 S. Ct. 305 (2015)................................................................................ 21, 22, 23

iii

*O'Lone v. Estate of Shabazz*
  482 U.S. 342 (1987)..................................................................... 15

*Overton v. Bazzetta*
  539 U.S. 126 (2003)..................................................................... 17

*Palmer v. Sanderson*
  9 F.3d 1433 (9th Cir. 1993)........................................................... 12

*Pearson v. Callahan*
  555 U.S. 223 (2009)..................................................................... 22

*Peralta v. Dillard*
  744 F.3d 1076 (9th Cir.2014) (en banc).......................................... 12

*Porter v. Nussle*
  534 U.S. 516 (2002)..................................................................... 10

*Prison Legal News v. Lehman*
  397 F.3d 692 (9th Cir. 2005)........................................................ 17

*Romero v. Akal Sec., Inc.*
  2010 U.S. Dist. LEXIS 40539 (S.D. Cal. April 23, 2010)................. 10

*Sapp v. Kimbrell*
  623 F.3d 813 (9th Cir. 2010)........................................................ 13

*Saucier v. Katz*
  533 U.S. 194 (2001)..................................................................21, 22

*Shakur v. Schriro*
  514 F.3d 878 (9th Cir. 2008)........................................................15, 18

*Stephen v. Alvarez*
  2016 U.S. Dist. LEXIS 74186 (N.D. Cal. June 7, 2016)................13, 14

*Turner v. Safley*
  482 U.S. 78 (1987)....................................................................... 17

*Walker v. Benjamin*
  293 F.3d 1030 (7th Cir.2002)........................................................ 12

*Woodford v. Ngo*
  548 U.S. 81 (2006)....................................................................... 11

iv

*Zands v. Nelson*
  797 F.Supp. 805 (S.D. Cal. June 25, 1992)............................................................ 11

**STATUTES**

42 U.S.C.
  § 1983....................................................................................................12, 19
  § 1997e(a)................................................................................................... 10
  § 2000cc-1 (3).............................................................................................. 3

California Code of Regulations, Title 15
  § 3006......................................................................................................... 18
  § 3044.2........................................................................................................ 6
  § 3054.4........................................................................................................ 6
  § 3054.4(a).................................................................................................... 5
  § 3084.1....................................................................................................... 11
  § 3210(a)....................................................................................................... 6
  § 3213(a)(1)-(3).............................................................................................. 7

Civil Rights Act .................................................................................................. 12

Prison Litigation Reform Act ......................................................................2, 10, 11, 13

RLUIPA ............................................................................................................... 3

**CONSTITUTIONAL PROVISIONS**

United States Constitution
  First Amendment ....................................................................................2, 3, 15, 16
  Eighth Amendment ..................................................................................3, 13, 19, 21
  Fourteenth Amendment ............................................................................3, 18, 19, 22

**COURT RULES**

Federal Rules of Civil Procedure
  Rule 12(b)(1) and (6) ....................................................................................... 3
  Rule 56 ........................................................................................................ 10

## INTRODUCTION

Plaintiff Bernardos Gray, when he was a state prison inmate, filed this civil rights action alleging Defendants, all current and former staff members with the California Department of Corrections and Rehabilitation (CDCR), violated his religious rights by denying him (1) kosher meals, (2) the ability to practice unspecified religious ceremonies, (3) access to unspecified religious garments and books, (4) a religious legal name change, (5) financial aid assistance, and (6) cellmate arrangements.

Plaintiff has moved for summary judgment against Defendants. But Plaintiff has not set forth any evidence in support of his motion, and therefore cannot show the undisputed material facts demonstrate that Defendants violated Plaintiff's religious rights. That alone is sufficient to deny a plaintiff summary judgment.

Further, Defendant-Chaplain Mitchell cannot be liable because he never had an opportunity to deny any of Plaintiff's requests, he had agreed to meet with Plaintiff to discuss them as soon as he could, and he cannot be liable for any delay in doing so because he was the only chaplain employed at Pelican Bay State Prison for the religious needs of approximately 3,100 inmates. Also, Plaintiff had only requested that Mitchell meet with him regarding religious services, not kosher meals, garments and books, a name change, financial aid, or cellmate arrangements.

The remaining Defendants are sued regarding the adjudication of Plaintiff's inmate appeal. But Defendants Lewis, Lozano, Davis, and Losacco were not the final decision-makers on this appeal, and therefore cannot be liable. Further, the actions of Defendants other than Mitchell was not grieved and exhausted, nor were the claims for a religious name change, cellmate arrangements, or financial aid.

Further, the decisions about Plaintiff's grievance for kosher food, the ability to practice unspecified religious ceremonies, access to religious garments and books, and cellmate arrangements, did not violate Plaintiff's rights under the First and Eighth Amendments, or under the Equal Protection Clause. Also, each Defendant is entitled to qualified immunity against Plaintiff's claims for damages under either prong of that doctrine.

Accordingly, Plaintiff's motion for summary judgment should be denied.

1

1.    Where Plaintiff has moved for summary judgment, but has not submitted any evidence in support of his motion, should his motion be denied on that basis?

2.    The Prison Litigation Reform Act (PLRA) bars an inmate from filing a civil rights suit before he exhausts all available administrative remedies.  Plaintiff filed suit alleging that Defendants Mitchell, Losacco, Lewis, Cook, Davis, and Lozano denied Plaintiff the right to practice his House of Yahweh religion by refusing his requests for kosher meals, religious items, religious services, a religious name change, financial aid assistance, and cellmate arrangements. But he failed to exhaust his religious name change, financial aid, and cellmate arrangement claims.  He also failed to grieve the alleged actions of Losacco, Lewis, Cook, Davis, and Lozano prior to filing suit.  Should Plaintiff's motion for summary judgment be denied because Plaintiff failed to exhaust his administrative remedies?

3.    To establish a First Amendment Free Exercise claim Plaintiff must show that Defendants burdened his religious practice by preventing him from engaging in conduct mandated by his faith, and that his practice was both sincerely held and rooted in religious belief. But this right is limited because it must give way to reasonable restrictions and limitations necessitated by legitimate penological interests.  Should Plaintiff's motion for summary judgment be denied because the evidence demonstrates that Defendants did not substantially burden Plaintiff's religious practice; and if any Defendant did, legitimate penological interests existed for their conduct?

4.    The Equal Protection Clause requires prison officials to treat all similarly situated inmates alike.  Plaintiff must show that the Defendants intentionally discriminated against him based on membership in a protected class.  And a claim fails if any difference in treatment between similarly situated inmates is reasonably related to legitimate penological interests. Should Plaintiff's motion for summary judgment be denied because the evidence demonstrates that Defendants offered Plaintiff a "reasonable" and "comparable" opportunity to pursue his faith, and that Defendants' conduct was in furtherance of legitimate penological interests?

5.     Prison officials must not be deliberately indifferent to an inmate's safety.  Plaintiff alleges that Defendants were deliberately indifferent to his safety when they denied Plaintiff certain religious accommodations that he sought at Pelican Bay.  Should Plaintiff's motion for summary judgment be denied because all admissible evidence shows that those Defendants who were presented with Plaintiff's religious requests took appropriate steps to assess his needs and provide him with reasonable accommodations?

6.     Government officials are entitled to qualified immunity if their actions did not violate a plaintiff's rights, or if it would not have been clear to a reasonable officer under the circumstances that their alleged conduct was unlawful.  Plaintiff does not state a claim that Defendants violated his constitutional rights, and it would not have been clear to reasonable officers under the circumstances that their alleged actions were unlawful.  Should summary judgment in favor of Plaintiff be denied because the undisputed material facts based on the evidence before the Court shows that Defendants are each entitled to qualified immunity?

## PROCEDURAL POSTURE

On February 4, 2014, the Court issued its Order of Service regarding Plaintiff's Complaint. (*See* Order, ECF No. 10.)  Liberally construed, the Court found that Plaintiff had alleged cognizable claims for violations of Plaintiff's (1) First Amendment right to freedom of religion, (2) the Religious Land Use and Institutionalized Persons Act codified under 42 U.S.C. § 2000cc-1 (RLUIPA), (3) Fourteenth Amendment right to equal protection, and (4) Eighth Amendment right to be free from cruel and unusual punishment.  (*Id.*)

On December 19, 2014, Defendants filed their motion to dismiss under FRCP 12(b)(1) and (6).  (ECF No. 36.)  On June 29, 2015, the Court granted in part and denied in part Defendants' motion to dismiss.  (ECF No. 56.)  The Court dismissed the official-capacity claims against Defendant Lewis and dismissed Plaintiff's RLUIPA claim.  (*Id.*)

On October 19, 2016, Defendants filed their motion for summary judgment with the Court. (ECF Nos. 90-105, 108.)  That motion is pending before the Court.

## I. THE PARTIES

Plaintiff claims to be a practitioner of the House of Yahweh religion. (Pl.'s Complt., ¶ 14, ECF No. 1.) He states that he arrived at Pelican Bay from California State Prison, Corcoran on June 28, 2012, and upon arrival, informed Pelican Bay staff that he was approved for kosher meals at Corcoran. (*Id.* at ¶¶ 15-17; Kao Decl., Ex. A (Gray 91:6-93:6).)[1] But there is no record of this.[2] (Losacco Decl., ¶ 14; Barnett Decl., ¶ 8.)

## II. PLAINTIFF'S LACK OF FACTS AND EVIDENCE.

Plaintiff has not submitted any facts and evidence, rather than conclusory statements, in support of his motion for summary judgment.

## III. DEFENDANTS' STATEMENT OF MATERIAL FACTS.

### A. Defendants Mitchell, Lewis, Lozano, Davis, and Losacco Did Not Make Decisions About Plaintiff's Rights.

Defendant-Chaplain Mitchell's involvement in this case consists of Plaintiff's requests to meet with Mitchell to discuss religious services and a House of Yahweh spiritual advisor. (Pl.'s Complt., ¶¶ 20-21, ECF pg. 7, Ex. B.) Mitchell never refused to meet with Plaintiff, nor did he deny any religious request made by Mitchell. (Kao Decl., Ex. A (Gray Depo 60:14-20, 63:21-65:1); Mitchell Decl., ¶ 12.) Instead, Mitchell informed Plaintiff he was unable to immediately meet with Plaintiff due to a prison lockdown and Mitchell's status as the only chaplain servicing the entire prison, which housed approximately 3,156 inmates. (Mitchell Decl., ¶¶ 3-4, 12, Exs. A-B; Thornton Decl., ¶ 5.) Further, there is no evidence that Plaintiff sought a meeting with Mitchell to discuss kosher meals, religious garments and books, a name change, financial aid, or cellmate arrangements. (Pl.'s Cmplt., ¶ 20, Ex. B, pgs. 52-53, ECF No. 1-2; Mitchell Decl., ¶ 3, Ex. A.)

---

[1] The evidence referenced in Defendants' opposition to Plaintiff's motion for summary judgment is the same evidence relied upon by Defendants in support of their motion for summary judgment that is pending before the Court. (ECF Nos. 90-105, 108.)

[2] After filing suit, but before his release from CDCR custody, Plaintiff was approved for, and began receiving, kosher meals on January 23, 2015. (Losacco Decl., Ex. A, ECF No. 46.)

4

Defs.' Opp'n to Pl.'s Mot. Summ. J. (C 13-4929 SI (PR))

Specifically, on July 1, 2012, Plaintiff submitted a CDC Form 22, Inmate Request for Interview, requesting to speak with someone about receiving House of Yahweh religious services and a Kohan (House of Yahweh spiritual advisor). (Pl.'s Complt., Ex. B, pg. 52; Mitchell Decl., ¶ 3, Ex. A.) In response, Mitchell informed Plaintiff that he would meet with him after "the [prison] lock-down is over." (*Id.*) Several days later, Plaintiff sent a second request to speak with Mitchell. (Pl.'s Complt., Ex. B, pg. 53; Mitchell Decl., ¶ 4, Ex. B.) Mitchell responded that he "would love to meet with you. However, I am the only Chaplain for facility. It would be hard to connect now. Hopefully, later next month. I will keep you on my visiting list." (*Id.*) Mitchell was the only chaplain employed at Pelican Bay at the time. (Mitchell Decl., ¶¶ 7-8, Ex. D.)

Defendants Lewis, Lozano, Davis, and Losacco, are sued only for their alleged decisions purportedly denying Plaintiff's inmate administrative appeal seeking religious accommodations. (Pl.'s Complt., ¶¶ 23-30, ECF pgs. 8-10; Kao Decl., Ex. A (Gray Depo 63:21-64:8).) But none of these Defendants were the final decision-maker regarding Plaintiff's appeal at any level. (Losacco Decl., ¶¶ 13-18, Ex. F; Cook Decl., ¶¶ 7-8, Ex. A; Lewis Decl., ¶ 7; Davis Decl., ¶¶ 5-7, Exs. A-B; Lozano Decl., ¶¶ 8-10, Exs. B-C.) Losacco only aided Defendant Cook, who decided the appeal at the second level of review. (Losacco Decl., ¶¶ 13-18, Ex. F; Cook Decl., ¶¶ 7-8, Ex. A.) Defendant Lewis had delegated the decision on Plaintiff's appeal at the second level of review to Defendant Cook. (Cook Decl., ¶¶ 7-8, Ex. A; Lewis Decl., ¶ 7.) At the third level of review, Lozano had delegated the decision on Plaintiff's appeal to a CDCR staffer member who is not a party to this lawsuit. (Davis Decl., ¶¶ 5-7, Exs. A-B; Lozano Decl., ¶¶ 8-10, Exs. B-C.) Lozano did sign off on a later amendment to the decision at the third level, but only to the extent of noting that Plaintiff had transferred to another prison by that time and had applied for religious accommodations at that other prison. (*Id.*)

**B.     CDCR's Guidelines On Participation in Religious Activities.**

**1.     CDCR's Religious Diet Program.**

Any inmate who claims to require a kosher diet shall be responsible for completing a CDCR Form 3030, Religious Diet Request, and submitting it to the institution's chaplain. Cal.

5

Code Regs., tit. 15, § 3054.4(a).[3]  At the time, only a Jewish chaplain could approve the request. *Id*. at § 3054.2.  If a request was submitted, the chaplain would conduct an inquiry to determine the inmate's eligibility.  *Id*. at § 3054.4(b)(1)-(11).

For a period of time, Pelican Bay was unable to employ a qualified Jewish staff chaplain. (Mitchell Decl., ¶ 7, Ex. D; Losacco Decl., ¶¶ 4-8, Ex. B.)  As a result, in August 2012, Pelican Bay implemented a procedure for staff to facilitate the kosher diet program.  (*Id*.)  Operational Procedure (OP) 809 was implemented to allow Pelican Bay inmates to apply for a kosher diet, as well as a procedure for staff to track program-participants and process compliance violations if they occurred.  (*Id*.)  Under OP 809, a rabbi would visit Pelican Bay to certify the program and interview inmates applying for kosher diets.  (Mitchell Decl., ¶ 8, Ex. D.)  The rabbi would establish eligibility for those inmates that had a legitimate religious need for the diet.  (*Id*.)

### 2. CDCR's Guidelines On Establishment of Religious Programs.

Institutional heads shall make every reasonable effort to provide for the religious and spiritual welfare of all interested inmates; including, but not limited to, affording inmates a reasonable accommodation to attend a scheduled religious service.  Cal. Code Regs., tit. 15, § 3210(a).  "Depending upon the number of inmates of the various faiths … [w]hen feasible, separate space for services of the faith groups represented by a substantial number of inmates shall be provided."  *Id*. at § 3210(b).  Reasonable time and accommodation shall be allowed for religious services in keeping with facility security and other necessary institutional operations and activities.  *Id*. at § 3210(c).  A request for a religious service accommodation that requires a specific time, location, and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee (RRC) for review and consideration.  The RRC is comprised of designated chaplains, and a correctional captain or their designee.  *Id*. at § 3210(d).

---

[3] Following the incidents giving rise to this action, Title 15 of the California Code of Regulations, Sections 3044.2 and 3054.4 were amended.  For the Court's convenience, copies of the relevant regulations in effect in 2012 and 2013 are attached as part of Defendants' Request for Judicial Notice (RJN), Exhibits A and B, respectively.

6

Defs.' Opp'n to Pl.'s Mot. Summ. J. (C 13-4929 SI (PR))

### 3. CDCR's Guidelines On Religious Items.

All items that an inmate may possess are listed on the Religious Personal Property Matrix (RPPM). (Losacco Decl., ¶ 11, Ex. D.) Prior written approval of the institution head or their designee shall be required for religious items. Cal. Code Regs., tit. 15, § 3213(a)(1)-(3). Pelican Bay Operations Manual Supplement section 101060.10 discusses how peripheral religious groups, such as the House of Yahweh, can obtain religious items. (Losacco Decl, ¶ 11, Ex. C.) Under section 101060.10, a chaplain's approval is required when an adherent to a peripheral religion claims that he requires certain religious items. (*Id*.) In such cases the RCC will establish criteria on an individual basis. (*Id*.)

### C. Plaintiff's Failure to Exhaust Administrative Remedies Regarding Claims For a Name Change, Financial Aid, Cellmate Arrangements, or Any Acts or Omissions By Lewis, Lozano, Losacco, Cook, or Davis.

Plaintiff submitted two inmate appeals in which he complained that he was denied religious accommodations, including participation in the kosher meal program, the practice of religious ceremonies, and access to unspecified religious garments and books, between June 28, 2012, when Plaintiff claims to have arrived at Pelican Bay, and October 23, 2013, when he filed the instant action (log nos. PBSP-B-12-03616 and PBSP-B-12-04034). (Sheldon Decl., ¶¶ 16-20, Exs. A-E; Voong Decl., ¶¶ 6-7, Exs. A-B.) Inmate appeal no. PBSP-B-12-03616 was accepted for review but appeal no. PBSP-B-12-04034 was cancelled as duplicative. (*Id*.)

Appeal no. PBSP-S-12-03616 was bypassed at the first level of review and was accepted for a second level review on November 16, 2012. (Sheldon Decl., ¶ 17, Ex. B.) The appeal did not concern any request for a religious name change, financial aid assistance, or cellmate arrangements. (*Id*.) This grievance was exhausted at the third level of review on April 15, 2013. (Sheldon Decl., ¶¶ 16-20, Exs. A-E; Voong Decl., ¶¶ 6-7, Exs. A-B.) Losacco, Lewis, Davis, and Lozano did not adjudicate the appeal. (Losacco Decl., ¶¶ 13-18, Ex. F; Cook Decl., ¶¶ 7-8, Ex. A; Lewis Decl., ¶ 7; Davis Decl., ¶¶ 5-7, Exs. A-B; Lozano Decl., ¶¶ 8-10, Exs. B-C.) Plaintiff also did not subsequently grieve the decisions or actions of Losacco, Lewis, Cook, Davis, or Lozano before filing suit. (Sheldon Decl., ¶¶ 16-20, Exs. A-E; Voong Decl., ¶¶ 6-7, Exs. A-B.)

1. **Plaintiff's Grievance PBSP-B-12-03616 Is Partially Granted At The Second Level.**

In this appeal Plaintiff sought (a) placement in the kosher-religious diet program, (b) unspecified religious garments and books, and (c) House of Yahweh religious ceremonies at Pelican Bay or granting Plaintiff a transfer to a prison that offers such services. (*Id.*) Nowhere in the grievance did Plaintiff request a name change, cellmate arrangement, or financial aid. (*Id.*)

Losacco interviewed Plaintiff and conducted an inquiry into his religion to evaluate possible accommodations. (Pl.'s Cmplt., ¶¶ 21-23; Losacco Decl., ¶¶ 13-18, Exs. E, F.) Losacco was not familiar with Plaintiff's religion and could not recall ever receiving any religious request from another House of Yahweh inmate-practitioner. (*Id.*) And there was no record of Plaintiff being approved for kosher meals prior to his arrival at Pelican Bay. (*Id.* at ¶ 14.) Losacco contacted the House of Yahweh's headquarters and was provided a pamphlet on its religious practice. (*Id.*) The pamphlet advised that practitioners could consume a kosher or vegetarian diet. (Losacco Decl., Ex. E; Pl.'s Cmplt., Ex. B, pg. 54, ECF No. 1-2.) While Losacco advised Defendant Cook to deny Plaintiff's request for a kosher diet because the prison did not have a rabbi to evaluate a kosher meal application, he also advised that Plaintiff be informed that he could apply for the program when a rabbi from another institution visited to inspect Pelican Bay's kosher diet program. (Losacco Decl., ¶¶ 16, 18, Ex. F.) And in the interim, since Losacco was advised that House of Yahweh practitioners could consume a vegetarian diet, he recommended that the person adjudicating the appeal, which was Defendant Cook at the second level of review, should offer Plaintiff either the religious meat alternative program or vegetarian diet until a rabbi could evaluate Plaintiff's request for kosher meals. (*Id.*)

In his appeal Plaintiff also sought unspecified religious items. (Losacco Decl., ¶ 15, Ex. F.) Losacco recommended granting the request and advising Plaintiff that he could purchase items consistent with his housing and privilege group. (Losacco Decl., ¶ 15, Ex. F; Pl.'s Cmplt., pgs. 63-64, ECF No. 1-2.) Because Losacco learned that the House of Yahweh's beliefs were similar to Judaism in some respects, he identified a list of approved items that Jewish inmates of the same housing and privilege group could purchase. (Losacco Decl., ¶ 15.) Losacco also recommended

that Plaintiff be referred to Pelican Bay's RPPM of approved religious items. (*Id.*) And that if Plaintiff sought an item outside the matrix, he should be told that he could submit a request for approval. (*Id.*)

Finally, Plaintiff also sought House of Yahweh religious services at the institution. (Pl.'s Cmplt., ¶¶ 21-23; Losacco Decl., ¶¶ 13-18, Ex. F.) But this request could not be granted because Plaintiff was the only known practitioner at the institution and Pelican Bay did not have sufficient resources or staffing to accommodate one inmate. (Losacco Decl., ¶ 17, Ex. F.) Therefore Losacco recommended that Plaintiff be offered the opportunity to attend Jewish services. (*Id.*) And Plaintiff also had the options of attending the service of another denomination, or participating in in-cell prayer or meditation. (*Id.*) Regarding Plaintiff's request for a prison transfer, Losacco recommended that the request be denied because any request would need to be evaluated by Plaintiff's correctional counselor. (*Id.*)

The second level response letter was reviewed and approved by Cook. (Cook Decl., ¶¶ 7-8, Ex. A.) Lewis was not involved in Cook's final determination. (Cook Decl., ¶¶ 7-8, Ex. A; Lewis Decl., ¶ 7.) Dissatisfied, Plaintiff sought a third level review. (Davis Decl., ¶¶ 6-7, Ex. A.)

### 2. Plaintiff's Grievance Is Denied At The Third Level Of Review.

Davis conducted the third level inquiry into Plaintiff's appeal and recommended that Cook's decision should be affirmed at the third level of review. (*Id.*) Davis determined that Plaintiff had failed to provide evidence warranting a modification of the second level decision and recommended that the appeal be denied at the third level review. (*Id.*)

Lozano was not involved in the third level determination. (Lozano Decl., ¶9, Ex. B.) And neither Davis nor Lozano made the final decision on Plaintiff's appeal at the third level of review. (Davis Decl., ¶¶ 5-7, Exs. A-B; Lozano Decl., ¶¶ 8-10, Exs. B-C.) Instead, that decision was delegated to another CDCR staff member who was not named as a party in this action. (*Id.*)

Following the determination of Plaintiff's grievance at the third level, on September 19, 2013, Davis and Lozano amended the third level denial letter to document that during the pendency of the appeal, Plaintiff had transferred to the California State Prison, Sacramento, and

1    was given the opportunity to apply for a kosher diet at that prison.  (Davis Decl., ¶ 7, Ex. B;

2    Lozano Decl., ¶ 10, Ex. C.)

3        Therefore, although some Defendants participated in the inquiry of Plaintiff's appeal, and

4    two participated in a minor amendment of the third level decision, Defendant Cook is the only

5    Defendant who made a final decision to deny Plaintiff's appeal, and he did so at the second level

6    of review.  (Losacco Decl., ¶¶ 13-18, Ex. F; Cook Decl., ¶¶ 7-8, Ex. A; Lewis Decl., ¶ 7; Davis

7    Decl., ¶¶ 5-7, Exs. A-B; Lozano Decl., ¶¶ 8-10, Exs. B-C.)  And that appeal did not concern a

8    request for a religious name change, financial aid assistance, or cellmate arrangements.

9                            **STANDARD OF REVIEW**

10   **I.    MOTION FOR SUMMARY JUDGMENT.**

11       Federal Rule of Civil Procedure 56 provides that a summary-judgment motion shall be

12   granted when there is no genuine issue as to any material fact, and if the moving party is entitled

13   to judgment as a matter of law.

14       In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), the Supreme Court made it

15   clear that a party opposing a motion for summary judgment must affirmatively show that a

16   dispute about a material fact is genuine, such that a reasonable jury could return a verdict for the

17   non-moving party.  This standard requires that if any evidence produced in opposition to a motion

18   is "merely colorable" or "not significantly probative," the motion must be granted.  *Id.* at 249;

19   *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288 (9th Cir. 1987).

20       Plaintiff carries the initial burden of proving (1) there are no genuine issues of material fact

21   as to any element of these claims, and (2) there are no genuine issues of material fact as to any

22   affirmative defenses asserted by Defendants.  *Romero v. Akal Sec., Inc.*, 2010 U.S. Dist. LEXIS

23   40539, * 6 (S.D. Cal. April 23, 2010) (citing *Zands v. Nelson*, 797 F.Supp. 805, 808 (S.D. Cal.

24   June 25, 1992).)

25   **II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER THE PLRA.**

26       The PLRA requires that an inmate exhaust all available administrative remedies before

27   filing suit in federal court.  42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

28   This requires that an inmate "properly exhaust," meaning that "prisoners must complete the

10

administrative review process in accordance with the applicable procedural rules, … rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citations and quotation marks omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 87 (2006)). Therefore, "[c]ompliance with prison grievance procedures . . . is required by the PLRA to 'properly exhaust.'" *Id.*

California allows inmates to appeal any departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the health, safety, or welfare of inmates and parolees. Cal. Code Regs. tit. 15, § 3084.1. An inmate may not attempt to raise claims further along in the appeals process that he did not raise when he initially submitted the appeal. *Id.* § 3084.2(a). The appeal process consists of a first, second, and third level of review. *Id.* § 3084.7. A decision at the third level exhausts the inmate's administrative remedies. *Id.* § 3084.7(d)(3).

The PLRA's exhaustion requirement exists in part to give the agency "'an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Woodford*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). The claims pled in a plaintiff's complaint must be equivalent to those exhausted in the appeal. *See Griffin v. Arpaio*, 557 F.3d 1117, 1119-20 (9th Cir. 2009) (plaintiff did not exhaust claim that prison officials were deliberately indifferent by not assigning him to a lower-bunk when his inmate appeal asked for a ladder to reach the top-bunk, because he failed to notify prison officials of his actual complaint (the lack of a lower bunk assignment)).

## ARGUMENT

### I. PLAINTIFF'S MOTION MUST BE DENIED BECAUSE HE FAILED TO SUBMIT EVIDENCE TO SUPPORT THE ELEMENTS OF HIS CLAIMS.

As the moving party, Plaintiff must adduce admissible evidence on all matters as to which he bears the burden of proof. *Zands v. Nelson*, 797 F. Supp. at 808. But Plaintiff fails to set forth any evidence for any of the elements necessary to support his claims, or any evidence challenging Defendants' affirmative defenses to such claims. Accordingly, Plaintiff's motion must be denied on this basis.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST MITCHELL, LEWIS, LOZANO, DAVIS, AND LOSACCO MUST BE DENIED BECAUSE THEY DID NOT CAUSE AN INJURY TO PLAINTIFF.

Relief sought under the Civil Rights Act can only be maintained against those personally involved in a deprivation of another's constitutional rights, *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1998), and there is no basis for liability against those who do not participate in a civil-rights violation. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993).

Plaintiff sought a meeting with Mitchell to discuss religious services and a House of Yahweh spiritual advisor, but Mitchell was unable to immediately meet with Plaintiff due to a prison lockdown and Mitchell's status as the lone chaplain servicing the entire institution consisting of 3,156 inmates at that time. (Mitchell Decl., ¶¶ 3-4, 12, Exs. A-B; Thornton Decl., ¶ 5; Losacco Decl., ¶ 4-5.) Mitchell's inability to rapidly meet with Plaintiff, at a time when he was the only chaplain for over 3,100 inmates, was not a denial of religious accommodations. *See Peralta v. Dillard*, 744 F.3d 1076, 1083–84 (9th Cir.2014) (en banc); *see also Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir.2002) (defendant doctor entitled to summary judgment where the plaintiff presented no evidence that delays in his visit with a specialist were within the doctor's control). In *Peralta*, a state prisoner brought a § 1983 action against the prison's chief dental officer and chief medical officer as well as the staff dentist alleging that they were deliberately indifferent to his serious medical needs when he experienced a several-month delay in having his teeth cleaned and receiving treatment for associated pain. *Peralta v. Dillard*, 744 F.3d at 1083-84. The defendant-dentist had to serve as dentist and hygienist for 3,000 inmates at three institutions. *Id.* The Ninth Circuit held that "[a] prison medical official who fails to provide needed treatment because he lacks the necessary resources can hardly be said to have intended to punish the inmate" for purposes of the Eighth Amendment's cruel and unusual punishment clause. *Id.* at 1082. The Ninth Circuit concluded that what resources were available to defendants is "highly relevant because they define the spectrum of choices that officials had at their disposal." *Id.* at 1083. The same reasoning and conclusion should apply to Mitchell. Further, Plaintiff requested to speak to Mitchell only about religious services and a spiritual advisor, not kosher

meals, religious garments and books, a name change, financial aid, or cellmate arrangements. (Mitchell Decl., ¶¶ 3-4, 12, Exs. A-B.)

As for Lewis, Losacco, Davis, and Lozano, they were not the persons who made the final decision on whether or not to grant the second and third level reviews of Plaintiff's grievance, and therefore Plaintiff's motion for summary judgment should be denied because they did not cause Plaintiff to suffer a deprivation. (Losacco Decl., ¶¶ 13-18, Ex. F; Cook Decl., ¶¶ 7-8, Ex. A; Lewis Decl., ¶ 7; Davis Decl., ¶¶ 5-7, Exs. A-B; Lozano Decl., ¶¶ 8-10, Exs. B-C.) Cook approved the second level determination, and a non-party CDCR staff member approved the third level decision. (*Id.*) Lozano approved the recommended amendment by Davis to the third level response letter documenting that Plaintiff was afforded the opportunity to apply for kosher meals after transferring to another prison. (*Id.*) Lewis had no involvement, and Losacco and Davis only investigated the grievance at the second and third levels of review. (*Id.*)

**III.   PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.**

Plaintiff also cannot obtain summary judgment against Defendants because the undisputed material facts based on the evidence show that he did not exhaust his claims against Defendants prior to bringing suit.

Under the PLRA, a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d at 1120. "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1120.

In this Court's previous decision in *Stephen v. Alvarez*, 2016 U.S. Dist. LEXIS 74186 (N.D. Cal. June 7, 2016), the plaintiff-inmate brought an Eighth Amendment claim against several prison health care providers based on their response to his injured foot. Defendants moved for summary judgment on the ground that the inmate did not exhaust administrative remedies. The evidence demonstrated that the plaintiff-inmate did not identify any of the defendants in the grievance he submitted. And he made no attempt to connect any of the alleged claims to any potential unidentified defendants so as to provide prison officials with "notice of the alleged deprivation and an opportunity to resolve it." *Id.* at *18, fn. 1 (citing *Reyes v. Smith*, 810 F.3d

13

654, 659 (9th Cir. 2016)). "He did not, for example, state that other unknown persons denied him medical care or even refer to them by title (e.g., "a nurse" and "a doctor"), an alternative the regulation indicates would be adequate." *Id.* (citing Cal. Code Regs. tit. 15, § 3084.2(a)(3)).

In this case Plaintiff's grievance could not have alerted the prison of any problem with respect to Plaintiff's claim for a religious name change, cellmate arrangements, or financial aid assistance because they were never sought in the grievance. And Plaintiff never filed a grievance regarding any alleged acts or omissions by Losacco, Cook, Lewis, Lozano, and Davis. Accordingly, summary judgment should be denied as to these claims and defendants.

### A. Plaintiff Did Not Exhaust His Claims For A Religious Name Change, Cellmate Arrangements, Or Financial Aid Assistance.

Plaintiff submitted two inmate appeals in which Plaintiff complained that he was being denied religious accommodations between June 28, 2012, when Plaintiff claims to have arrived at Pelican Bay, and October 23, 2013, when Plaintiff filed the instant action (log nos. PBSP-B-12-03616 and PBSP-B-12-04034). (Sheldon Decl., ¶¶ 16-20, Exs. A-E; Voong Decl., ¶¶ 6-7, Exs. A-B.) Inmate appeal no. PBSP-B-12-03616 was accepted for review. (*Id.*) But appeal no. PBSP-B-12-04034 was cancelled as duplicative. (*Id.*)

Appeal no. PBSP-S-12-03616 was bypassed at the first level of review and was accepted for a second level review on November 16, 2012. (Sheldon Decl., ¶ 17, Ex. B.) In this appeal, Plaintiff requested (a) placement on the kosher-religious diet program, (b) religious garments and books, and (c) that Pelican Bay hold House of Yahweh religious ceremonies for inmates; or, alternatively, a prison transfer for Plaintiff. (*Id.*) The appeal did not concern any request for a religious name change, financial aid assistance, or cellmate arrangements. (*Id.*) This grievance was exhausted at the third level of review on April 15, 2013. (Sheldon Decl., ¶¶ 16-20, Exs. A-E; Voong Decl., ¶¶ 6-7, Exs. A-B.) Accordingly, Plaintiff's motion for summary judgment must be denied for these three unexhausted claims.

### B. Plaintiff Did Not Subsequently Exhaust His Claims Against Losacco, Cook, Lewis, Davis, And Lozano For Their Alleged Actions Deciding Plaintiff's Prior Inmate Appeal.

14

Plaintiff alleges that Losacco, Cook, Lewis, Lozano, and Davis violated his civil rights when they allegedly decided appeal no. PBSP-B-12-03616. (*Id.*) But thereafter, Plaintiff did not submit a subsequent inmate administrative grievance regarding the alleged decisions of these five Defendants. (*Id.*) Accordingly, summary judgment must be denied for these parties.

### C. Plaintiff Was Familiar With CDCR's Grievance Process.

In *Albino v. Baca*, the Ninth Circuit held that exhaustion motions should now account for the fact that *Albino* places on defendants the burden to prove that an inmate was aware that a grievance system exists. *Albino v. Baca*, 747 F.3d 1162, 1171-1173 (9th Cir. 2014) (en banc). Prior to submitting appeal no. PBSP-12-03616, Plaintiff submitted two inmate grievances that received a third level review. (Voong Decl., Ex. A.) This demonstrates Plaintiff's understanding of CDCR's grievance process prior to the incidents giving rise to this action.

In summary, Plaintiff failed to exhaust everything except for his claims against Mitchell for kosher food, religious services, and unspecified religious garments and books. And for additional reasons explained above and below, the limited claims Plaintiff did exhaust also fail.

### IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANTS DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHT.

The Free Exercise Clause of the First Amendment gives inmates the limited right to exercise their religion in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The right is limited because it must give way to reasonable restrictions and limitations necessitated by legitimate penological interests. *Id.* at 348-49. Therefore, to establish a free-exercise claim in the prison context, Plaintiff must show that: (1) Defendants burdened his religious practice by preventing him from engaging in conduct mandated by his faith; and (2) his practice was both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884-88 (9th Cir. 2008). The burden on a plaintiff's religious beliefs must be "substantial." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds as recognized by Shakur*, 514 F.3d at 884-85. The "burden must place more than an inconvenience on religious exercise." *Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006).

Here, none of Defendants' actions substantially burdened Plaintiff's ability to practice his faith. And even if they did, the undisputed material facts show that Defendants had good penological reasons for their conduct.

**A.    Defendants Did Not Substantially Burden Plaintiff's Religious Practice.**

Since the lack of a rabbi prevented Pelican Bay from approving new inmates for the kosher diet program, Losacco explored alternatives to accommodate Plaintiff. (Losacco Decl., ¶ 12, Ex. E.) The House of Yahweh provided Losacco with a pamphlet explaining that practitioners could consume a vegetarian diet. (Losacco Decl., ¶ 14, Ex. E.) And Plaintiff relies on this same pamphlet explaining that he could consume either a kosher or vegetarian diet, when he claimed to have explained to appeals staff what his religious needs were. (Pl.'s Cmplt., ¶¶ 21-22, Ex. B, ECF pgs. 7-8, 54, ECF Nos. 1, 2-1; Kao Decl., Ex. C.) The inability to approve Plaintiff for kosher meals was not a substantial burden to Plaintiff's religious practice since it is undisputed that Plaintiff's religion permitted him to consume a vegetarian diet, which was offered to him.

Additionally, Defendants did not substantially burden Plaintiff's religious practice regarding his access to religious items. In fact, Cook approved Plaintiff's request for religious items in accordance with the prison's RPPM and prison guidelines that all inmates must comply with. (Losacco Decl., ¶¶ 15-18, Ex. F; Cook Decl., ¶¶ 7-8, Ex. A; Davis Decl., ¶¶ 6-7, Exs. A-B.)

Further, Defendants also did not substantially burden Plaintiff's religious practice by denying Plaintiff chapel access for House of Yahweh ceremonies. Plaintiff was the only known practitioner at Pelican Bay and the prison did not have sufficient staff or resources to accommodate one inmate. (*Id.*) And the recommendation for Plaintiff to attend the service of another denomination is not a violation of the First Amendment. *See Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) ("A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.")

Finally, Mitchell, Lewis, Davis, Losacco, and Lozano were not involved in any alleged denial of religious accommodations. The evidence demonstrates that Defendants did not substantially burden Plaintiff's religious practice.

16

## B. Alternatively, Defendants' Conduct Was Reasonably Related To Legitimate Penological Interests.

Even if Plaintiff could show a substantial burden, that burden would nonetheless be constitutional if it was reasonably related to a legitimate penological goal. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). The Supreme Court reminded lower courts to not underestimate the difficulties of operating a correctional facility. *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 132 S. Ct. 1510, 1515 (2012). With due deference to correctional officials in mind, a court must uphold "a regulation impinging on an inmate's constitutional rights" if that regulation "is reasonably related to legitimate penological interests." *Id.* The plaintiff bears the burden of disproving the validity of a prison policy. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

In determining whether a prison regulation is reasonably related to a legitimate penological interest, the Court should consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective, (2) whether there are alternative avenues that remain open to the inmates to exercise the right, (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005)

A legitimate penological interest existed to deny Plaintiff's request for House of Yahweh religious ceremonies. The decision was rationally related to the legitimate and neutral government objective of allocating sufficient staffing and resources at the institution. The impact of accommodating Plaintiff would have been excessive since Plaintiff was the only known practitioner of the religion and Pelican Bay did not have sufficient staffing or resources to accommodate one inmate. (Losacco Decl., ¶ 15, Ex. F.) And Plaintiff was offered an alternate avenue to exercise his right when they authorized Plaintiff to attend chapel during the services of another denomination, as well as in-cell prayer or meditation. (*Id.*)

Further, a legitimate penological interest existed to the extent that Plaintiff claims he was denied religious items. While Plaintiff's claim is unclear since he did not specify the items he

17

sought through the appeals process, the RPPM is rationally related to the legitimate and neutral government objective of allowing inmates the ability to practice their religion against the safety and security concerns of the institution regarding contraband (Cal. Code Regs., tit. 15, § 3006). (Losacco Decl., ¶ 11, Ex. D.)  Plaintiff was offered any item on the RPPM based on his housing and privilege group.  (*Id*. at ¶¶ 11, 15, Exs. D, F.)  And if Plaintiff sought an item outside the matrix, he was informed to notify staff to obtain consent.  (*Id*.)

Finally, to the extent that Pelican Bay could not admit new inmates to the kosher diet program, an alternate avenue for Plaintiff to practice his religion existed since he could consume a vegetarian diet.  (Losacco Decl., ¶ 14, Exs. E, F; Pl.'s Cmplt., ¶¶ 21-22, Ex. B, ECF pgs. 7-8, 54, ECF Nos. 1, 2-1; Kao Decl., Ex. C.)

Since legitimate penological interests existed to support Defendants' conduct, Plaintiff's motion for summary judgment should be denied.

## V. PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DEFENDANTS DID NOT VIOLATE PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION.

The Equal Protection Clause requires prison officials to treat all similarly situated inmates alike.  *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013).  To establish an equal-protection violation, an inmate must show that the defendant intentionally discriminated against him based on membership in a protected class.  *Id*.  The analysis begins with identifying the class to which the inmate belongs, and then examines whether the inmate was treated differently from others similarly situated.  *Id*.  Any difference in treatment between similarly situated inmates must be reasonably related to legitimate penological interests, as *Turner* requires.  *See Shakur v. Schriro*, 514 F.3d at 891 ("Under the *Turner* test, Shakur cannot succeed if the difference between the defendants' treatment of him and their treatment of Jewish inmates is 'reasonably related to legitimate penological interests.'").

Regarding religion in particular, the analysis is functionally the same as for a religious-exercise analysis.  As with the Free Exercise Clause, the Equal Protection Clause requires officials to give inmates a reasonable opportunity to pursue their faith comparable to that of inmates adhering to conventional religious precepts.  *Cruz v. Beto*, 405 U.S. at 322.  But absolute

18

equality is not required, because an opportunity that is "reasonable" and "comparable" may not always be identical. *Id.* at 322 n.2.

The evidence demonstrates that Plaintiff was offered a "reasonable" and "comparable" opportunity to pursue his faith. Cook approved Plaintiff's request for religious items and referred him to Pelican Bay's RPPM, which all inmates must rely on in purchasing religious items. (Losacco Decl., ¶¶ 11, 15, Exs. D, F.) And while Cook denied Plaintiff's request for chapel access for House of Yahweh religious services, he granted Plaintiff the opportunity to attend the services of another denomination, or participate in in-cell prayer or meditation. (Losacco Decl., ¶ 17, Ex. F; Cook Decl. ¶¶ 7-8, Ex. A; Davis Decl., ¶¶ 6-7, Exs. A-B.) And Cook granted Plaintiff the ability to join the religious-meat alternative program, or a vegetarian diet which Plaintiff admits is in accordance with the House of Yahweh religion, until Plaintiff could apply for kosher meals, which he did after he left Pelican Bay. (Losacco Decl., ¶ 14, Ex. F; Cook Decl. ¶¶ 7-8, Ex. A; Davis Decl., ¶¶ 6-7, Exs. A-B; Kao Decl., Exs. B-C.) And Mitchell, Lewis, Losacco, Davis, and Lozano were not involved in the determination. (Mitchell Decl., ¶¶ 3-4, 12, Exs. A-B; Cook Decl., ¶¶ 7-8, Ex. A; Lewis Decl., ¶ 7; Davis Decl., ¶ 7, Ex. B; Lozano Decl., ¶ 10, Ex. C.) Also, a legitimate penological interest existed for Cook's decisions. Accordingly, summary judgment should be denied as to Plaintiff's Fourteenth Amendment Equal Protection claim.

## VI. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANTS DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.

"For an inmate to bring a valid 42 U.S.C. § 1983 claim against a prison official for a violation of the Eighth Amendment, he must first objectively show that he was deprived of something sufficiently serious. A deprivation is sufficiently serious when the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Next, the inmate must make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety. To satisfy this subjective component of deliberate indifference, the inmate must show that prison officials knew of and disregarded the substantial risk of harm, but the officials need not have intended any harm

19

to befall the inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.*, citing *Farmer*, 511 U.S. at 842. "Finally, plaintiffs alleging deliberate indifference must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Id.,* (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010)).

The subjective inquiry of the second prong of this test involves two parts. First, Plaintiff must demonstrate that the risk was obvious or provide other circumstantial or direct evidence that Defendants were aware of a substantial risk to Plaintiff's safety. *Lemire*, 726 F.3d at 1078. Second, Plaintiff must show that there was no reasonable justification for exposing Plaintiff to the risk. *Id.* A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Mitchell, Lewis, Losacco, Davis, and Lozano, did not deny Plaintiff's requests. Cook denied the requests before him for kosher food, religious items, and services. But the evidence demonstrates that Cook, and the other Defendants, did not violate Plaintiff's Eight Amendment right to be free from cruel and unusual punishment regarding food, items, and services. Losacco conducted an inquiry into Plaintiff's grievance requesting religious accommodations. (Losacco Decl., ¶¶ 14-18, Ex. F.) There was no record of Plaintiff being approved for a kosher diet at Corcoran. (*Id.* at ¶ 14.) And since Losacco was not familiar with the religion, he sought guidance from the House of Yahweh headquarters and was provided a pamphlet on how to practice the religion. (*Id.*) The pamphlet explained that practitioners could consume a vegetarian diet. (*Id.* at ¶ 14, Exs. E, F.) And Plaintiff relied on this same pamphlet while petitioning Pelican Bay in his appeal. (Pl.'s Cmplt., ¶¶ 21-22, Ex. B, ECF pgs. 7-8, 54, ECF Nos. 1, 2-1; Kao Decl., Exs. B-C.) Cook granted Plaintiff the religious-meat alternative program or a vegetarian diet until Plaintiff could apply for kosher meals, which happened after he left Pelican Bay. (Losacco Decl., ¶ 14, Ex. F; Cook Decl. ¶¶ 7-8, Ex. A; Davis Decl., ¶¶ 6-7, Exs. A-B.)

20

Cook also approved Plaintiff's request for religious items and referred him to Pelican Bay's RPPM, which all inmates must rely on in purchasing religious items. (Losacco Decl., ¶¶ 11, 15, Exs. D, F.) And while Cook denied Plaintiff's request for chapel access for House of Yahweh religious services, they granted Plaintiff the opportunity to attend the services of another denomination, or participate in in-cell prayer or meditation. (Losacco Decl., ¶ 17, Ex. F; Cook Decl. ¶¶ 7-8, Ex. A; Davis Decl., ¶¶ 6-7, Exs. A-B.)

Summary judgment should be denied on Plaintiff's Eighth Amendment claim.

## VII. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD ALSO BE DENIED BECAUSE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AGAINST PLAINTIFF'S CLAIMS.

Qualified immunity shields government officials from suit, even if their actions were unconstitutional, as long as those officials' actions "d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). Qualified immunity ensures that officials are on notice that their conduct is unlawful before they are subjected to suit. *Saucier v. Katz*, 533 U.S. 194, 205-06 (2001).

In *Saucier v. Katz* the Supreme Court set out two questions to be considered in determining whether qualified immunity exists. The Court must consider whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and Defendant prevails. *Id.* If, however, "a violation could be made out on a favorable view of the parties' submissions, the Court must consider whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 201-02 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has held that the Court may exercise its discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first: whether a violation of a clearly established constitutional right occurred, or whether the official could have reasonably believed that his particular conduct was lawful. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The qualified immunity defense allows

21

mistakes even if the law was clearly established. *Saucier*, 533 U.S. at 205. The officer is entitled to qualified immunity if the "mistake as to what the law requires is reasonable" under the circumstances. *Id*.

A right is clearly established if it is sufficiently clear that any reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate. *Mullenix v. Luna*, 136 S. Ct. at 308. Because "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law," the Supreme Court held that the inquiry into clearly established law "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation marks and citations omitted).

> **A.** **Because No Statutory Or Constitutional Rights Were Violated, Defendants Are Entitled To Qualified Immunity Under The First Part Of *Saucier*.**

The evidence demonstrates that, as detailed above, Defendants did not violate Plaintiff's First, Eighth, and/or Fourteenth Amendment rights. As a result, Plaintiff cannot fulfill the first prong of *Saucier* for these claims and Defendants are each entitled to qualified immunity.

> **B.** **It Would Not Have Been Clear To A Reasonable Official Under The Circumstances That Defendants Committed Unlawful Acts.**

Recently the Supreme Court reiterated the required legal analysis of the second prong of qualified immunity in *Mullenix v. Luna*, 136 S.Ct. 305 (2015). In *Mullenix* the court held that a district court must not define clearly established law at a high level of generality since doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced. *Id.* at 308. "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis in original). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation and citation omitted).

It would not have been clear to Mitchell that he was violating clearly established law when, as the sole religious chaplain trying to serve the religious needs of more than 3,100 inmates at Pelican Bay, he informed Plaintiff that he could not meet with him immediately to discuss the

22

Defs.' Opp'n to Pl.'s Mot. Summ. J. (C 13-4929 SI (PR))

1    issues Plaintiff raised regarding religious services and a spiritual advisor, but would try to do so

2    the next month. Nor would it have been clear to Mitchell that he would violate Plaintiff's alleged

3    rights to kosher food, unspecified religious garments and books, a name change, financial aid, and

4    cellmate arrangements, none of which were mentioned in Plaintiff's requests to meet with

5    Mitchell, when Mitchell informed Plaintiff he was very busy but hoped to meet with him the next

6    month. Mitchell is entitled to qualified immunity under the second prong of that doctrine.

7    And it would not have been clear that the remaining Defendants violated Plaintiff's alleged

8    right to a name change, financial assistance, and cellmate arrangements, in connection with the

9    adjudication of Plaintiff's inmate appeal, when these three claims were not raised in that appeal.

10   Nor would it have been clear to a reasonable official under the circumstances who was

11   adjudicating Plaintiff's inmate appeal that they had denied Plaintiff a diet that comported with his

12   religious needs, when Cook approved Plaintiff for a vegetarian diet, the materials submitted by

13   Plaintiff confirmed that a vegetarian diet fulfilled the religious requirements of Plaintiff's House

14   of Yahweh religion, and Plaintiff was told he would be evaluated for a kosher diet once a rabbi

15   visited Pelican Bay.

16   It also would not have been clear to a reasonable official adjudicating Plaintiff's inmate

17   appeal that, in light of the fact that Plaintiff was the only known practitioner of House of Yahweh

18   at Pelican Bay, Cook did not offer Plaintiff exclusive use of the prison chapel, but instead allowed

19   him to attend services held by other religions, and to participate in in-cell prayer or meditation, as

20   alternatives.

21   Last, it would not have been clear to a reasonable official adjudicating Plaintiff's inmate

22   appeal that Cook's decision to approve Plaintiff's request for religious items as permitted by the

23   institution's RPPM, and to allow Plaintiff to apply for permission to obtain items not on the

24   approved list, was a violation of clearly established law under the circumstances.

25   The decisions and acts of Defendants were reasonable under the circumstances before them,

26   and were not in violation of clearly established law. Therefore each Defendant is entitled to

27   qualified immunity under either prong of that doctrine.

28

**CONCLUSION**

Plaintiff's failure to set forth any evidence in support of his motion is alone a sufficient basis to deny his motion for summary judgment. Further, the evidence submitted by Defendants shows, as argued in their own pending motion for summary judgment, that Defendants, rather than Plaintiff, are entitled to summary judgment. Further, summary judgment should also be denied because Plaintiff failed to exhaust his administrative remedies as to all Defendants and claims. And Defendants are also entitled to qualified immunity under either prong of that doctrine. Accordingly, Plaintiff's motion for summary judgment should be denied in its entirety.

Dated: January 10, 2017

Respectfully Submitted,

KATHLEEN A. KENEALY
Acting Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General

*/s/ Bryan Kao*
BRYAN KAO
Deputy Attorney General
*Attorneys for Defendants Mitchell,*
*Lozano, Losacco, Davis, Lewis, and Cook*

SF2014407539
20925187.doc